for the appellant. Is it Leitz or Leitz? Leitz. Leitz. I should know that. And Mr. Meacham for the appellate. You may proceed. If it pleases the court and counsel, Your Honor, we're here today on an issue concerning a claim of Vicki Kinney who's seeking full reimbursement for some funeral expenses which she paid. There's no dispute that she paid. The issue before the court is did the balance in the account of Deceden's joint checking account of $6,866.94 pass to Nicole Kinney who was the joint owner as the surviving joint tenant in the checking account or, as the other side argues, was that amount of money an asset of the estate that was paid to Kinney as partial reimbursement of funeral expenses? Basically, this boils down to whether the Deceden, by adding Nicole Kinney, intended to make a gift of the money in the joint account by adding her, I believe it would be her granddaughter's name to the account or, as the other side argues, was adding Nicole Kinney's name merely a convenience to aid the Deceden during her life to pay her bills. We think that the facts in this case, and with all due respect to the judge, he erred, that the claimant intent, I'm sorry, that there was an intent to make a gift to Nicole Kinney by adding Nicole's name as a joint tenant. And we think that the key testimony in this matter has to do with the testimony of the first witness that we called named Frances Becker. Mrs. Becker was a friend and a confidant, I guess if you would, of the Deceden. She had done income taxes for the Deceden before and had provided some advice on simple, basic family, individual planning. And in the deposition, not the deposition, the transcript of the hearing, and I believe it's on page 24, the key testimony that we believe was what Mrs. Becker testified to and that was a conversation she had with the Deceden. And Norma Kinney, the Deceden, asked Mrs. Becker what would happen to the money in her checking account if Nicole Kinney was added to that account. And Becker's answer was the money would go to Nicole when the Deceden, or Norma Kinney, died. And then Norma Kinney said, I want to add Nicole's name because Nicole is not working and she needs the money. And I believe, and what we're urging upon the court, that the plan was that the money would go to Nicole Kinney at the Deceden's death. Is that Nicole's understanding? Did she think this was... No. In fact, that's the interesting part about this case because Nicole Kinney has vehemently, you know, the record is clear. There's no point in trying to deny it. Nicole Kinney vehemently denied that that was her money. Well, that's contrary to her interests, isn't it? Yeah, but as I hope I pointed out in the brief, two things. And the most important one has to do with a conversation that we elicited during the rebuttal portion of the hearing, and that was the testimony of a lady named Debbie Surgent. And again, I'm emphasizing, if I may, to the court, that not only Mrs. Becker, but Debbie Surgent are people that have no interest, they have nothing to gain from this. What does Nicole have to gain? Well, Nicole has nothing to gain except for one thing, and I tried to point that out in my brief. And with all due respect to her, I think Nicole took the position that the court is inquiring about as a revenge motive. And that is, Nicole, you know, was a young lady that's trying to feel her way around in the world. I hate to say she's a ne'er-do-well. At that point in her life, I don't know what she's doing now, but at that point in her life, she really didn't have much going for her. She, in essence, has scored some money, this $6,800 rounded off, but now it's gone because Vicki Kinney is saying, Nicole, you owe me this money. Well, you haven't explained to me how she benefits by taking the position she did that it wasn't her money. It would not be a direct benefit. It would be, as I pointed out in the brief, merely a factor of revenge. I had this money, but I had to give it to Vicki Kinney. And so it isn't that she stood to gain anything directly of money into her pocket. It's more of, by testifying as she did, she obviously convinced the trial court judge that what we're arguing is not so. He believed her. Pardon me? He believed her. Did she believe it? The judge believed her. Oh, yes, he did. See, here's the problem, Mr. Leitz. You're looking at a panel, if I have my vision correct, that has cumulatively about 45 years' experience as trial judges. That means that we are acutely aware of how much better the position of the trial judge is than this court in determining questions like credibility. We've all been involved in decades' worth of hearings where we've seen and evaluated people make credibility determinations, and now we just have a cold record. So I suppose my question is, how in the world are we supposed to second-guess Judge Clary here, who saw and heard all of these witnesses and reached this conclusion, and say, you know, you believe the wrong people and you believe the wrong things, Judge, because we up here in the appellate court, we just see this so much better than you? I can't sit here and deny to the justices what you're just saying. I mean, it's a general rule that the trial court judge is in the better position to see the witnesses and to make some determination. We have the burden of proving that Judge Clary, with all due respect, acted contrary to the manifest weight of the evidence. And when you talk about manifest weight of the evidence, it seems to me that even within that statement of the standard review, the gold standard is the trial court's credibility determinations, which Judge Clary made here. But let me respond by saying this. Judge Clary decided what Judge Clary did. But the thing that kind of, to use a cliché that sticks in my craw, is that we've got two independent witnesses. Mrs. Becker, again, has nothing to gain. Debbie Surgeon came pursuant to a subpoena. She was not going to come unless I subpoenaed her. Well, you're attributing strange motives to Nicole. Why can't there be some antipathy from some of these people that maybe Judge Clary picked up, that maybe they don't like some of the family interactions going on here and are putting a certain tinge on their recollection to go along with their current assessment of who's who and what's what in this family? And let me point out briefly in response, if I could, you talked about maybe Judge Clary picked something up. Debbie Surgeon's only testimony was that she had this conversation with Nicole Kenny in her kitchen when they were preparing to have a party, to arrange a party for Nicole's sister, Lindsay Kenny. You know, again, with all due respect to the judge, I can't... Well, to call her independent when she starts her testimony by saying, yeah, Vicki and I have been friends for over 40 years, I mean, she's closely tied in, even though she's not a family member, but she's closely tied to the individual whose testimony she gives would help. I mean, that's exactly the kind of credibility determination or trial court arches his or her eyebrow and wonders, should I believe this person and do I? And I thought that there's also something in the record. Isn't there an exhibit that has Vicki and Ms. Surgeon, they're on a joint checking account together? Am I misremembering that or is there something? And I don't know that anybody makes anything out of it, but I thought they had a joint checking account, which suggests a connection between them that's different than a typical independent witness. I don't specifically recall that latter part, but let me make a response if I could, Your Honor or Justice. When Debbie Surgeon was called as a witness, a rebuttal witness, I asked her those questions about her relationship. No, and I commend you for that, but that, nonetheless, then the trial court is entitled to take that into account. I mean, I'm certainly not a – there are many more attorneys in this state that are more skilled at trying lawsuits than I am, but my policy has been if there's something out there, let's have us bring it out. I think that's the right way to do it, personally, but once it's out there, the court's entitled to weigh it. But, again, I understand what you're saying, but I just think with all due respect to Judge Clary, notwithstanding his duty to make these decisions, I think he ignored some very key evidence here, and particularly the plan was for Mrs. – in the conversation early on between Mrs. Becker and the decedent, Norma Kinney, the plan was to have at Mrs. Kinney's – the decedent's death, that money go to Nicole. The other side argues, well, there were 271 checks written over the course of a year. I'm sure I'm going to get these numbers. They're not going to be 100 percent correct, most of which were signed by the decedent. But, again, we feel that the trial court judge not missed the boat but failed to really take a look at what that plan was. That plan was that the decedent was going to have the use of that money to take care of herself for the last year of her life and to pay the final bills, but that the balance went to Nicole Kinney. So, I also pointed out this Johnson v. LaGrange State Bank, which apparently is two cases that were consolidated together. I mean, there's no question that in a situation like this, they couldn't have that plan. So, for the reasons stated, Your Honor, we're asking the court respectfully to reverse the decision of the trial court judge and to determine that this was intended as a gift and that the money goes to the surviving joint tenant. I want to apologize to you. I misstated a fact, counsel. It is that Becker and Vicki had a joint checking account. For some reason, it's not clear in the record. Not Sargent, and I misunderstood that. And now that you've reminded me, what had happened is, as I recall, Vicki Kinney worked at the Central Foundry in Danville. When they closed that facility, she moved to Indianapolis so she could retain her pension. And so, it was that juncture where Becker and Vicki Kinney had a joint account so that Becker could write some checks for Vicki Kinney while she was working in Indianapolis. That was the circumstance. And I stand corrected. I'd forgotten about that. So, thank you for your time, Your Honor. Thank you. May it please the court, counsel. I'm Bruce Meacham. I'm attorney for Clifford Kinney, the executor of the estate of Norma Kinney. I've referred in my brief and will also in an oral argument to him as the executor. That's how I'll refer to him. Did she have a substantial estate? No, Your Honor, she didn't. And there is, in the common law record, there is a current account that the executor filed, I believe, in July of 2009 that indicates the assets that the estate had at that point. And I believe... Had about what? About $40,000 roughly, $40,000 to $45,000. The major asset was a house that was sold for $38,000. And then some smaller assets, this bank account that's $6,900 roughly that's the subject of this dispute would have been a significant asset for this estate. Has that answered your question, Justice McCollum? Yes. Okay. I don't think there's any disagreement between counsel in this matter about the applicable law. Essentially, our disagreement is over a factual determination the trial judge made. As the justices have acknowledged, the trial judge in this case is the finder of fact, is entitled to a lot of... is the person making the credibility determination of witnesses and reviewing courts as the law clearly provides must give great deference to the trier of fact, especially on matters concerning credibility of witnesses. There certainly was conflicting testimony from the witnesses before Judge Clary. And Judge Clary in his ruling obviously concluded that he felt Nicole Kinney was a credible witness. There certainly is a sufficient basis in the record for establishing that. As Justice Steigman pointed out, Nicole was testifying against her interest. She had nothing to gain from testifying the way that she did. Mr. Leitz indicated that his theory is that she had some revenge motive for testifying against his client, Vicki. But that's purely speculation. There's certainly nothing in the record of testimony that would indicate that she had any motive of that nature. That's strictly speculation. Mr. Leitz stresses that the two principal witnesses that he called in support of his client's position were independent witnesses, Francis Becker and Debbie Surgeon. I think there's very clearly evidence in the record that they were not completely independent, neutral witnesses. As Justice Knecht pointed out, there was evidence that Francis Becker and Vicki Kinney were both on a joint account for several years. And that evidence, there was some testimony that Vicki, where she made reference to that during the trial. Also, there is an exhibit in the file. It's the Claimant's Exhibit No. 3. It was an exhibit that Vicki Kinney put into evidence that has copies of several bank statements or checks. Checks, I guess it is, indicating that there's a joint account between the two of them. Debbie Surgeon, early on in her testimony, testified that she's been best friends with Vicki for 40 years. So I don't think we have two totally neutral witnesses there. Francis Becker, there was even some, her credibility was impugned somewhat under cross-examination. She gave some testimony about how long she had known the decedent. And she had known the decedent going back to, I think it was the 1950s or 60s when she and her husband operated a tavern. Cliff Kinney's testimony was that his parents did not begin operating a tavern until the late 1970s. So there was some conflicting testimony there. In addition to conflicting testimony, I want to stress there's also some documentary exhibits in the record that I think are pretty clear in terms of how this bank account in question was utilized after Nicole Kinney's name was added. As Mr. Leese pointed out, there's one exhibit that shows that for the 13-month period approximately between the time when Nicole's name was added and the time of the decedent's death, there were 271 checks written on the account. All but 37 of those checks during that 13-month period while the decedent was alive were signed by the decedent. The other 37 were signed by Nicole and I think it's pretty clear from the testimony that those checks were to purchase items for the decedent. There were an additional six checks signed by Nicole after the decedent's death before the account was closed and all six of those checks pertained to payment of final bills for the decedent. So in addition to there being sufficient testimony in the record, primarily from Nicole, to support the trial court's finding in this case, there's also separate apart from that documentary evidence that backs up Nicole's testimony. This is strictly a factual determination by the trial court judge based on his determination of the credibility of the witnesses. As indicated in the cases that I've cited in my brief, primarily the Wildman and the Vancura cases, a reviewing court must give great deference to trial court's factual findings and especially to factual findings that are based on trial court's determination of the credibility of the witnesses. I think Nicole's testimony about her understanding of this account is very critical. She very clearly indicated she never believed the money that was hers. I think under cross-examination she even made a comment, sure I had bills to pay that I owed at the time of my grandmother's death, but I didn't think this money was mine. She felt that it belonged to the estate. She believed that when she turned those funds over to Vicki, they were going to go into her grandmother's estate. I want to point out that the turning over of the funds to Vicki occurred prior to the time when an estate proceeding had been opened up and an executor had been appointed. I think in one of Mr. Leitz's briefs he raises the question, he said, why didn't Nicole turn over the money to the executor? Well, at the time that account was closed there was no executor appointed. The account was closed on May 16th of 2008. The docket sheet and the common law record clearly indicate that a petition to probate the will to open an estate was filed on May 20th of 2008 and that the executor was appointed on June 2nd of 2008. So the closing of the account occurred prior to when there was an executor in place who could receive those funds. Both counsel have cited a number of cases in their briefs where we've discussed the outcome of the cases. In some cases the review in court upheld the decision that the joint account at issue was truly a joint account and it belonged to the surviving joint owner, joint tenant. In other decisions the review in court has upheld the decision of the trial court that the account was intended to be a convenience account and the funds in that account should go to the estate. All of those cases that we've cited clearly are very fact-based cases. They were factual determinations by the trial court. The facts of the case were discussed very extensively in the appellate court opinions. All of these kinds of cases really are fact-based decisions. This was certainly a fact-based decision by Judge Clary and there is certainly sufficient evidence in the record to support his decision. The law is very clear that a factual determination by a trial court is overturned on appeal only when the evidence contradictory to that ruling is just so overwhelming that it's clearly obvious that the trial court made the wrong ruling. That's certainly not the case here. There's plenty of evidence both from Nicole Kinney's testimony and from the documentary evidence in the file to support the conclusion that Judge Clary reached in this case that this account was a convenience account only like in the Shea case that's cited in my brief and that the funds belonged to the decedent's estate and when they returned over to Vicki she received estate funds that were credited for the claim that she filed against the estate. On that basis, I believe that there's sufficient evidence to support the trial court's factual ruling and that ruling should be affirmed on appeal. The claimant paid the funeral expenses? That's correct, Your Honor. There's no dispute about that. Why? Why is she paying? I don't really know that there's any evidence in the record to indicate what her motive was for paying them but there's no dispute or disagreement that she paid them and that she's entitled to be reimbursed by the estate for them and that's what the estate did. There's evidence attached to her claim that's in the record that she was paid by the estate an amount that was the difference in the amount of the claim that she filed for the funeral expenses that she paid, the difference between that amount and the $6,600 that she received when this joint account was closed. There's never been an argument about whether or not she paid the funeral bill. That's always been stipulated to by the parties. Thank you, counsel. Your Honor, Mr. Leach? Yes, Your Honor. I want to respond to what Mr. Meacham said and that has to do with whether there's facts in the record but also when I first began putting this brief together I thought, you know, the big hurdle here is this issue of is the record, is the judge's decision supported by the manifest weight and I hearken back to the opinion letter that Judge Clary wrote. It was a three-page letter and I know it's in the record but the thing that was why I went ahead and did this and what was concerning to me is that the three-page written opinion of Judge Clary that was handed to us and Mr. Meacham subsequently prepared the judgment order from that that really concerned me is that the whole focus was on the 271 checks written. There's no dispute that the checks were written and they were basically used for Mrs. Kinney's benefit but there was nothing in there, there wasn't one mention of Debbie Surgeon. Her testimony, whether he believed Debbie Surgeon or not. Mrs. Becker, who I know it appears to the court I'm putting all my eggs in one basket with Frances Becker but Mrs. Becker was only mentioned once. The judge made no written determination in writing that these people were incredible or he didn't believe them. What if the court had simply said the request for reimbursement is denied? Would you be here? Again, yes. And I know what's going on in your mind here. I know where this is headed but that's something that's very concerning to me and I'm not suggesting, I know Judge Clary, I'm not suggesting that he flipped a coin or something like this but that's what is very concerning to me is little things that keep adding up. There was no mention of that. And again, Mr. Meacham made the comment about, you know, Vicki didn't believe the money was hers after the decedent died and she gave the money to Vicki Kinney, Nicole gave the money to Vicki Kinney because it was to go to the estate. She stood there in a credit union while the money is moved from the decedent's checking account and put into Vicki Kinney's savings account in the name of Vicki Kinney, not the estate. So again, I'm just pointing that out to the court. I don't mean to belabor this. Thank you very much. Was the most important thing in this proceeding the order entered by the trial court? Say that again, please. Was the most important thing in this proceeding the order that was entered by the trial court? No, to me the most important thing in this proceeding was the opinion letter of Judge Clary. In fact, that was the most important thing?  I do mention that. I believe it is in the brief. I alluded to that either in my...  It's been a while since I've done this. Pardon me? Yeah, okay, on page 2 of my... Oh, yeah, page 2, the first full paragraph that begins the court's findings and the executor in this argument and that was where I mentioned that, but at any rate, I appreciate your time, Your Honors, and thank you very much. Thank you, Ken. I take this matter under advisement.